**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| NORMA PELLEGRIN AND MARK PELLEGRIN, | Civil Action No.  2:26-cv-00830 |
| Plaintiffs, | Judge  Lance M. Africk |
| vs. | Magistrate Judge Janis van Meerveld |
| ZOLL MEDICAL CORPORATION, | |
| Defendant. | |

**DEFENDANT ZOLL MEDICAL CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Defendant ZOLL Medical Corporation requests this Court enter an order granting Defendant's Motion to Dismiss Plaintiffs Norma Pellegrin and Mark Pellegrin's Petition pursuant to Federal Rules of Civil Procedure 8(a) and 12(b)(6).

**Introduction**

Plaintiffs bring this product liability action involving the ZOLL LifeVest® wearable cardioverter defibrillator ("LifeVest"), a medical device worn by patients who are at high risk of sudden cardiac death. LifeVest is an FDA Premarket Approval ("PMA") Class III medical device—the class with the greatest risk to the patient due to its life-sustaining nature, and which therefore receives the highest degree of pre-market scrutiny from the FDA. LifeVest performs its life-sustaining functions through the use of sophisticated components, circuitry, and algorithms to detect when a wearer is experiencing an abnormally fast heart rhythm and, if needed, deliver a treatment shock to help the heart return to a normal rhythm.

Plaintiffs claim that the subject LifeVest that Ms. Pellegrin was wearing on March 5, 2025

1

detected an arrythmia and delivered two inappropriate treatment shocks that she did not actually need. Plaintiffs allege claims under the Louisiana Products Liability Act arising from alleged defects in the subject LifeVest's manufacture, design, and warnings, as well as breach of express warranty. Plaintiff Mark Pellegrin brings a loss of consortium claim.

But federal law preempts all of Plaintiffs' claims in their entirety. LifeVest underwent the rigorous and extensive premarket approval process by the Food and Drug Administration ("FDA") reserved for critical medical devices. Under *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 326-29 (2008), Plaintiffs' state-law claims are expressly preempted because they necessarily seek to impose upon Defendant requirements that are different from, or in addition to, those required by federal law. Plaintiffs' claims also are impliedly preempted, because the federal Food, Drug and Cosmetic Act ("FDCA") prohibits private actions to enforce federal law, including the FDA's requirements for LifeVest. *See* 21 U.S.C. § 337(a); *Buckman Co. v. Plaintiff's Legal Comm.*, 531 U.S. 341 (2001). To the extent there are any non-preempted claims buried within the Petition, they are insufficiently pleaded and must be dismissed.

## Factual Background

### A. LifeVest

LifeVest is a potentially lifesaving medical device approved by the FDA and prescribed by health care professionals to  patients who are at a high risk of sudden cardiac death. (*See* M. Mims Decl. Exs. 1, 2 at 3;[1]); *See Croci v. ZOLL Medical Corporation*, No. 24-CV02137-NSR, 2025 WL

---

[1] Exhibits 1 to 4 of the Declaration of Michael Mims are public records available on the FDA's website. The Court may take judicial notice of public records in deciding a motion to dismiss. *See Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (finding that the district court appropriately used judicial notice to take notice of publicly available documents from the FDA, including a grant of PMA). Judges in this district have previously found that Premarket Approval and other device-related documents published by the FDA are appropriately subject to judicial notice. *See, e.g.*, *Celino v. Biotronik, Inc.*, 536 F. Supp. 3d 89, 101 (E.D. La. 2021); *Scianneaux v. St. Jude Medical, S.C., Inc.*, 961

2307728, at *4 (S.D. N.Y. Aug. 11, 2025) (recognizing "that the LifeVest is a Class III medical device that has received PMA"). Most pertinent to this case, LifeVest includes an FDA-approved arrythmia monitoring functionality, which is designed to assess the likelihood that the wearer is experiencing a life-threatening, but treatable, rapid heart rhythm. If the device detects such an arrythmia—ventricular tachycardia ("VT") or ventricular fibrillation ("VF"), it issues a warning vibration and siren so that if the wearer is conscious, he or she may press response buttons to avoid a treatment shock. (M. Mims Decl. Ex. 2 at pp. 3-4). This FDA approved design also relies upon conscious users to avoid the risk of unintended shock by pressing the response buttons. (*Id.*)

Because LifeVest is used "in supporting or sustaining human life or for a use which is of substantial importance in preventing impairment of human health," 21 U.S.C. § 360c(a)(1)(A)(ii)(II), it is a Class III medical device—the highest class—and received premarket approval ("PMA") from the FDA in 2001. (M. Mims Decl. Ex. 1.) The FDA generally approves new medical devices through one of two channels: (1) substantial-equivalency approval (also called "510(k) clearance") or (2) premarket approval ("PMA"). *See generally* 21 U.S.C. § 360c(i) (510(k) clearance); *id.* § 360e(a) (PMA). The FDA approved the LifeVest's design, labeling, and patient training materials through the more complex, lengthy, and scientifically robust PMA process, on December 18, 2001, and subsequent Premarket Approval Supplements. (M. Mims Decl. Exs. 1, 4).

**B. The FDA exercises rigorous and comprehensive oversight of Class III PMA medical devices.**

The 1976 Medical Device Amendments ("MDA") to the FDCA created a comprehensive

F. Supp. 2d 808, 812 (E.D. La. 2013); *Doucet v. Abbot Laboratories, Inc.*, Slip Copy, No. 25-405, 2025 WL 1548534, at *7 (E.D. La. May 29, 2025).

"regime of detailed federal oversight" for medical devices. *Riegel*, 552 U.S. at 316; *see* 21 U.S.C. § 360c. The MDA established three classes of medical devices based on use and level of potential risk. *Buckman*, 531 U.S. at 344. Class III medical devices like LifeVest "'presen[t] a potential unreasonable risk of illness or injury' and therefore incur the FDA's strictest regulation." *Id*. (alteration in original; quoting 21 U.S.C. § 360c(a)(1)(C)(ii)(II)).

Because of the inherent risks involved in such life-sustaining devices, the PMA process is "exhaustive," *Buckman*, 531 U.S. at 349; "rigorous," *Riegel*, 552 U.S. at 317; and "run[s] the gauntlet," *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 494 (1996). It involves "a time-consuming inquiry into the risks and efficacy of each device." *Buckman*, 531 U.S. at 348. The FDA reviews the manufacturer's detailed submissions regarding their devices, "spending an average of 1,200 hours on each submission." *Lohr*, 518 U.S. at 477. Ultimately, to gain PMA, the manufacturer must demonstrate that the device satisfies the statutory standard: a reasonable assurance of safety and effectiveness. *See* 21 U.S.C. §§ 360c(a)(1)(C), 360e(c); *see also Riegel v. Medtronic, Inc.*, 451 F.3d 104, 109 (2d Cir. 2006), *aff'd*, 552 U.S. 312 (2008).

In scrutinizing PMA applications, the FDA "weigh[s] any probable benefit to health from the use of the device against any probable risk of injury or illness from such use." *Riegel*, 552 U.S. at 318 (quoting 21 U.S.C. § 360c(a)(2)(C)). If the FDA is not satisfied with the information provided, it can demand more. *See id*. (citing 21 U.S.C. § 360e(c)(1)(G)). It can also require a manufacturer to revise the device's design, manufacturing methods, or labeling to obtain approval. *See id*. at 319 (citing 21 C.F.R. § 814.44(e)). The FDA "grants premarket approval only if it finds there is a 'reasonable assurance' of the device's 'safety and effectiveness.'" *Id*. (quoting 21 U.S.C. § 360e(d)). This reasonable assurance of safety and effectiveness, however, is not a guarantee of

complete safety. In fact, the FDA recognizes that they may "approve devices that present great risks if they nonetheless offer great benefits in light of available alternatives." *Riegel*, 552 U.S. at 318.

The FDA's regulatory role does not end with the approval of a PMA application. "Once a device has received premarket approval, the MDA forbids the manufacturer to make, without FDA permission, changes in design specifications, manufacturing processes, labeling, or any other attribute, that would affect safety or effectiveness." *Id.* at 319 (citing 21 U.S.C. § 360e(d)(6)(A)(i)). If a manufacturer wishes to make changes, it must submit a supplemental application for premarket approval and may implement the changes only after receiving FDA approval. *See id.* (citing 21 U.S.C. § 360e(d)(6); 21 C.F.R. § 814.39(c)).

The FDA has the authority to investigate violations of the FDCA and its amendments, and "has at its disposal a variety of enforcement options that allow it to make a measured response" to any problems that it discovers. *Buckman*, 531 U.S. at 349 (rejecting tort claims by private litigants based on allegations that a company fraudulently obtained FDA permission to market a device and holding that the federal government is exclusively authorized to bring actions under the FDCA and to police "fraud-on-the-FDA"). The MDA is not enforceable by private litigants; rather, any actions to enforce FDA requirements as to a PMA device "shall be by and in the name of the United States." *Id.* at n. 4 (quoting 21 U.S.C. § 337(a)).

In short, PMA medical devices do not reach the market unless the FDA, following an exhaustive and lengthy review, imposes requirements for all aspects of the device relating to safety and effectiveness—including its design, labeling, and patient training materials, and determines that the device's overall risk/benefit profile is such that licensed healthcare professionals should

have the option of prescribing it if they believe it might improve the health or save the life of a patient.

### C.  Norma Pellegrin's LifeVest

Ms. Pellegrin had a history of cardiac disease including "non-ST elevation myocardial infraction with heart failure." (Pet. (Doc. No. 1-1) ¶ 9.) As part of recovery from her heart attack, Ms. Pellegrin was prescribed a LifeVest by one of her healthcare providers. (*Id*. ¶ 10.) Ms. Pellegrin claims that she began using the subject LifeVest, and on March 5, 2025, the subject LifeVest administered two "inappropriate" treatments. (*Id*. ¶¶ 11, 13.) Ms. Pellegrin claims her neck snapped forward, causing pain to her neck and spine. (*Id*. ¶¶ 12-14.) She sought treatment at Thibodaux Regional Health System that same day. (*Id*. ¶ 15.)

### D.  Plaintiffs' Claims

Plaintiffs allege in conclusory fashion that Ms. Pellegrin's LifeVest "was defective when it left ZOLL's control." (Pet. ¶ 24.) Plaintiffs argue that the subject LifeVest "deviated from its intended design;" that the design itself was unreasonably dangerous; that it was unreasonably dangerous because of inadequate warnings; and/or that it was unreasonably dangerous due to nonconformity with ZOLL's express warranties. (*Id*. ¶¶ 29-47). That, however, is the extent of the Petition's specificity.

Based on these conclusory allegations, Plaintiffs' Petition asserts four causes of action under the Louisiana Products Liability Law (Count I) unreasonably dangerous in construction or composition, (Count II) unreasonably dangerous in design, (Count III) unreasonably dangerous because of inadequate warning, and (Count IV) unreasonably dangerous because of nonconformity to express warranty. But the treatment shocks described in the Petition are known risks of LifeVest,

6

part of the device's FDA-approved design, and do not, by themselves, establish that the subject LifeVest was unreasonably dangerous or defective. All of these claims are preempted and fail as a matter of law.

**Legal Standard**

Dismissal should be granted when a complaint fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). A complaint must plead enough facts to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). But "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Courts will not credit conclusory allegations because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. A plaintiff must do more than raise "a sheer possibility that the defendant has acted unlawfully." *Id*.

Dismissal is also appropriate when it is apparent from the complaint and any documents subject to judicial notice that the plaintiff's claims are barred by federal preemption as a matter of law. *See Funk v. Stryker Corp*., 631 F.3d 777; *see also Celino v. Biotronik, Inc.*, 536 F. Supp. 3d 89, 101–05 (E.D. La. 2021) (dismissing plaintiff's LPLA claim of unreasonably dangerous in construction or composition claim on preemption grounds). A complaint that fails to adequately plead claims that survive preemption should be dismissed. *Funk,* 631 F. 3d 782.

Courts in this circuit have held that, in the context of MDA preemption, dismissing a complaint is proper where a plaintiff fails to "allege a state-law claim which is genuinely

equivalent to a federal requirement, i.e., one which is premised upon the violation of a federal requirement." *Lemelle v. Stryker Orthopaedics*, 698 F. Supp. 2d 668, 678 (W.D. La. 2010). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Naquin v. Medtronic, Inc.*, No. 20-2401, 2020 WL 7060150, at *3 (E.D. La. Dec. 2, 2020) (quoting *Iqbal*, 556 U.S. at 678); *see Reddick*, 2022 WL 715494, at *3 ("Even if a state law claim is parallel, a district court may still dismiss if it if the claim is "impermissibly conclusory and vague.").

## Argument

### I. Plaintiffs' claims are preempted by federal law.

The preemption doctrine is derived from the Supremacy Clause of the United States Constitution, which provides that the "[l]aws of the United States … shall be the supreme Law of the Land." U.S. Const. art. VI, cl. 2. A federal law preempts state law in any one of the following three circumstances: (1) "a federal statute may expressly preempt the state law"; (2) "a federal law may impliedly preempt a state law"; or (3) "preemption results from an actual conflict between a federal and a state law." *Garcia v. Wyeth-Ayerst Labs.*, 385 F.3d 961, 965 (6th Cir. 2004); *see also U.S. v. Zadeh*, 820 F. 3d 746, 751 (5th Cir. 2016); *Garcia v. Wyeth-Ayerst Labs.*, 385 F.3d 961, 965 (6th Cir. 2004). The central inquiry in any preemption analysis is to determine the intent of Congress. *Lohr*, 518 U.S. 470 (citation omitted).

In 1976, Congress enacted the MDA, 21 U.S.C. § 360c, to the FDCA, 21 U.S.C. §§ 301 *et seq*. The MDA grants the FDA authority to regulate medical devices, creating a comprehensive "regime of detailed federal oversight." *Riegel*, 552 U.S. at 316. The MDA creates three classes of medical devices based on each device's use and their level of potential risk. *Buckman*, 531 U.S. at 344. Class III medical devices "support[] or sustain[] human life" or "present[] a potential

unreasonable risk of illness or injury." 21 U.S.C. § 360c(a)(1)(C)(ii). Therefore, they "incur the FDA's strictest regulation." *Buckman*, 531 U.S. at 344.

The same federal law that requires rigorous review and approval of Class III medical devices like LifeVest also preempts state-law product liability and negligence claims challenging the device's safety. Thus, 21 U.S.C. § 360k(a) prohibits states from imposing "any requirement" relating to the safety or effectiveness of a medical device that "is different from, or in addition to, any requirement applicable … to the device" under federal law. *See Riegel*, 552 U.S. at 321-22. Consequently, "nearly all types of claims concerning FDA-approved medical devices are preempted." *In re Medtronic, Inc. Sprint Fidelis Leads Prods. Liab. Litig.*, 592 F. Supp. 2d 1147, 1161 (D. Minn. 2009), *aff'd*, 623 F.3d 1200 (8th Cir. 2010).

Two forms of federal preemption arise in this case and bar Plaintiffs' claims. First, ***express preemption*** arises because Plaintiffs' claims attempt to impose requirements "different from, or in addition to," federal requirements governing the safety or efficacy of LifeVest. *See* 21 U.S.C. § 360k (expressly preempting state law requirements for safety and efficacy).[2] Second, ***implied conflict preemption*** arises from Plaintiffs' attempt to enforce FDA medical device requirements that are the exclusive domain of the federal government. *See* 21 U.S.C. § 337(a) (providing that FDA enforcement proceedings "shall be by and in the name of the United States").

Express and implied preemption require a plaintiff's state law claim to fit through a "narrow gap" to survive dismissal. *Celino v. Biotronik, Inc.*, 536 F. Supp. 3d 89, 100 (E.D. La. 2021). A plaintiff must be suing "'for conduct that *violates* the FDCA (or else his claim is expressly preempted by § 360k(a)), but the plaintiff must not be suing *because* the conduct violates the FDCA (such a claim would be impliedly preempted under *Buckman*).'" *In re Medtronic, Inc.,*

---

[2] Express preemption applies not only to requirements imposed by state legislative enactments but also by state common law tort duties. *See Riegel*, 552 U.S. at 323–24.

*Sprint Fidelis Leads Prod. Liab. Litig.*, 623 F.3d 1200, 1204 (8th Cir. 2010). Additionally, the duties imposed by the state and federal requirements must be "genuinely equivalent" if not "identical." *Wolicki-Gables v. Arrow Int'l, Inc.*, 634 F.3d 1296, 1300 (11th Cir. 2011) (genuinely equivalent); *Wisher v. Medtronic, Inc.*, 616 F. App'x 433, 434 (2d Cir. 2015) (identical); *see Lemelle*, 698 F. Supp. 2d at 678 (W.D. La. 2010) ("in order to avoid express preemption, [a plaintiff] must allege a state-law claim which is genuinely equivalent to a federal requirement, i.e., one which is premised upon the violation of a federal requirement."); *Gavin v. Medtronic, Inc.*, No. 12-0851, 2013 WL 3791612, at *17 (E.D. La. July 19, 2013) (dismissing causes of action on the grounds of preemption and providing that plaintiff failed "to identify the traditional state law duties that are 'parallel' 'or genuinely equivalent'" to the FDA requirements).

To validly allege a parallel claim that fits through this narrow gap, the plaintiff must allege that the defendant violated a particular federal specification referring to the device at issue. *See Funk v. Stryker Corp.*, 631 F.3d 777, 782 (5th Cir. 2011) (upholding dismissal where plaintiff's complaint failed to identify how a manufacturer of a Class III device deviated from the FDA approved manufacturing process). It is not enough for the plaintiff to "'simply incant the magic words '[the manufacturer] violated FDA regulations' in order to avoid preemption.'" *Naquin*, 2020 WL 7060150, at *6 (citing *In re Medtronic, Inc., Sprint Fidelis Leads Prod. Liab. Litig.*, 529 F.Spp.2d 1147, 1158 (D. Minn. 2009)).

Here, Plaintiffs' claims are both expressly preempted and impliedly preempted. Under either doctrine, they must be dismissed.

### A. Plaintiffs' claims are expressly preempted.

In *Riegel*, the Supreme Court established a two-part test for determining whether state law claims involving a Class III medical device are expressly preempted. First, the court must

determine whether "the Federal Government has established requirements applicable to" the device. 552 U.S. at 321. Second, if the Federal Government has established applicable requirements, the court must determine whether a plaintiff's state law claims would impose "requirements with respect to the device that are 'different from, or in addition to' the federal ones, and that related to safety and effectiveness." *Id.* at 321-22 (quoting 21 U.S.C. § 360k(a)); *see Gavin*, No. 12-0851, 2013 WL 3791612 (applying two-step *Riegel* express preemption test).[3]

### 1. LifeVest is a PMA Class III medical device under federal law.

As a Class III device that went through the PMA process, LifeVest easily meets the first part of the *Riegel* test. Indeed, *Riegel* established that premarket approval of a medical device imposes federal requirements applicable to the device as a matter of law. *See* 552 U.S. at 322; *see also Lemelle*, 698 F. Supp. 2d at 674 (W.D. La. 2010 ("As a practical matter, any device that has been approved by the PMA process will satisfy the first prong of the *Riegel* preemption analysis).

### 2. Plaintiffs' claims would impose requirements different than or in addition to the FDA requirements for LifeVest.

The factual allegations in this case also satisfy the second part of the *Riegel* test. The facts alleged in the Petition, scant as they are, indicate that Plaintiffs' claims target the safety of LifeVest and seek to impose additional or different requirements than those detailed requirements imposed by the FDA when it granted PMA to LifeVest.

***Plaintiffs fail to adequately plead a parallel manufacturing defect claim***. Count I of

---

[3] Following *Riegel*, courts in the Fifth Circuit have regularly rejected state law claims on preemption grounds. *See Rodriguez v. Am. Med. Sys., Inc.*, 597 Fed. Appx. 226, 229 (5th Cir. 2014) (affirming district court's dismissal of complaint involving Class III medical device on preemption grounds); *Greene v. Nevro Corp.*, No. 23-CV-1648-JWD-RLB, 2025 WL 369682, at *7 (M.D. La. Jan. 31, 2025) (dismissing plaintiff's LPLA claims involving Class III medical device on preemption grounds); *Reddick v. Medtronic, Inc.*, No 21-30169, 2022 WL 715494, at *3 (5th Cir. Mar. 9, 2022) (affirming dismissal of defective construction, defective design, failure to warn, and breach of express warranty claims involving a Class III device under the LPLA because all four claims imposed requirements that relate to the safety and effectiveness of the device).

Plaintiffs' Petition asserts a manufacturing defect claim under La. R.S. 9:2800.55, alleging the subject LifeVest "deviated from its intended design or from otherwise identical products manufactured by ZOLL, rendering it unreasonable dangerous." (Pet. ¶ 29.)

A manufacturing defect claim, like any other state-law claim, is *expressly* preempted if it imposes a requirement that is different from, or in addition to, the federal requirements applicable to the device, and/or is *impliedly* preempted if it seeks to enforce federal requirements under the guise of state law. Indeed, as a broad rule, "allegations of strict products liability based on manufacturing defect … are precisely the type of claims the MDA sought to preempt." *Williams v. Cyberonics, Inc.*, 388 F. App'x 169, 171 (3d Cir. 2010).

Manufacturing defect claims are preempted unless the plaintiff specifies both "how the manufacturing process failed" and sets forth "a causal connection between the failure of the specific manufacturing process and the specific defect in the process that caused injury." *Funk*, 631 F.3d at 782.

Moreover, without specific allegations of fact about the alleged violation of federal requirements in the process of manufacturing the subject device, a federal PMA manufacturing violation cannot just be presumed because problems can arise even when the manufacturer complies with all manufacturing process specifications. *See Walker v. Medtronic, Inc.*, 670 F.3d 569, 580-81 (4th Cir. 2012).

Here, Plaintiffs generically claim that the subject LifeVest deviated from design specifications. (Pet. ¶¶ 29.) Plaintiffs ***never identify how the subject LifeVest deviated from its intended design nor any design specification to which the subject LifeVest did not comply***.

Even if Plaintiffs did refer to an actual design specification that the subject LifeVest

deviated from (they do not), Plaintiffs never identified any FDA regulation that allegedly was violated—nor could they. In short, Plaintiffs fail to:

- Allege a specific deviation from LifeVest's intended design;

- Allege a specific violation of FDA requirements;

- Specify a manufacturing process failure; or

- Explain how a manufacturing process failure caused the subject incident.

Without pleading these essential elements, Plaintiffs' manufacturing defect claims are preempted and should be dismissed. *See Rodriguez v. Am. Med. Sys., Inc.*, 597 Fed. Appx. 226, 230 (5th Cir. 2014) (holding that plaintiff failed to plead a non-preempted manufacturing defect claim where he failed to identify "any deviation from the FDA-approved … manufacturing processes" and a nexus to plaintiff's alleged injury).

***Plaintiffs' design defect claim is likewise preempted***. In Count II, Plaintiffs assert a design defect claim under La. R.S. § 9:2800.56, which provides that a product is unreasonably dangerous in design if an alternative design exists capable of preventing the alleged damage and "[t]he likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product." La. R.S. § 9:2800.56. But PMA devices have already undergone the FDA's risk-benefits analysis. *Riegel*, 552 U.S. at 318; *see Doucet*, 2025 WL 1548534 at *6 (citing *Riegel*, 552 U.S. at 318) ("In analyzing PMA applications, the FDA balances 'any probable benefit to health from the use of the device against any probable risk of injury or illness from such use.'"). Count II of Plaintiffs' Petition is therefore preempted because, to prevail, Plaintiffs would be required to establish that Defendant should have

13

used a different design than the one approved by the FDA. *Hinkel v. St. Jude Medical, S.C.*, 869 F. Supp. 2d 739, 748 (E.D. La. 2012) (to maintain a defective design claim the plaintiff "would have to prove that an alternative design existed and that [the manufacturer's] choice not to adopt this alternative design was unreasonable under the circumstances."). *See also Reddick v. Medtronic, Inc.*, 2022 WL 715494, at *3 (affirming dismissal of a defective design claim under the LPLA because the claim would impose requirements that relate to the safety and effectiveness of the device).

**Plaintiffs' failure to warn claim is preempted**. In Count III, Plaintiffs assert a failure to warn claim under La. R.S. § 9:2800.57, arguing the subject LifeVest "was unreasonably dangerous because ZOLL failed to provide adequate warning and instructions…regarding the risk of inappropriate discharge." (Pet. ¶ 39.) The claim is preempted because it expressly alleges Defendant is liable for not providing additional warnings or instructions on the risk of inappropriate treatments beyond what the FDA requires and approved.

Claims that a manufacturer of PMA devices should have provided additional warnings beyond what the FDA requires are preempted. *See Riegel*, 552 U.S. at 329 ("Surely … the MDA would pre-empt a jury determination that the FDA approved labeling for a pacemaker violated a state common-law requirement for additional warnings."); *Hinkel*, 869 F. Supp. 2d at 747-48 (finding all claims asserted under the LPLA to be preempted and providing that to permit a jury to decide that warnings approved by the FDA were "inadequate under Louisiana law effectively displaces the FDA's exclusive role.") (internal quotation omitted). Here, Plaintiffs' failure to warn claim is premised upon the allegation that Defendant should have provided additional or different warnings regarding the risk of inappropriate shock from LifeVest in the event a conscious patient

14

fails to press the response buttons. It must be dismissed.

*Plaintiffs' nonconformity with express warranty claim is also preempted*. In Count IV of the Petition, Plaintiffs assert a claim for nonconformity to express warranty under La. Rev. Stat. § 9:2800.58. Plaintiffs' claim is premised upon the generic allegation that "[t]he LifeVest failed to conform to ZOLL's express representations" regarding its "safety, performance, and suitability for its intended purpose," thereby "rendering it unreasonably dangerous." (Pet. ¶¶ 44, 45.)

Under La. Rev. Stat. § 9:2800.58, "[a] product is unreasonably dangerous when it does not conform to an express warranty made at any time by the manufacturer about the product if the express warranty has induced the claimant or another person or entity to use the product and the claimant's damage was proximately caused because the express warranty was untrue." But express representations about PMA devices are subject to comprehensive FDA regulation and, therefore, are expressly preempted. *Hinkel*, 869 F. Supp. 2d at 747-48 (finding the plaintiff's LPLA express warranty claim was preempted as the plaintiff would need to prove that representations made regarding the device were untrue and such a determination "would clearly undermine the federal regulatory scheme."). Here, Plaintiffs claim the subject LifeVest did not conform to "ZOLL's express representations." Plaintiffs' claim is preempted and should be dismissed.

**B.      Plaintiffs' claims are impliedly preempted under 21 U.S.C. § 337(a) and *Buckman*.**

Plaintiffs' claims are not only expressly preempted, they are also impliedly preempted under 21 U.S.C. § 337(a) and the Supreme Court's holding in *Buckman*.

Congress has declared that all actions to enforce violations of the FDCA against manufacturers "shall be by and in the name of the United States." 21 U.S.C. § 337(a). Section 337(a) prohibits any private right of action to enforce FDA violations, vesting sole power for such enforcement with the federal government. *See Buckman,* 531 U.S. at 352. Thus, this provision

15

impliedly preempts claims that seek to enforce FDA requirements that have no analogous common law right. *See id.* at 349-50

Plaintiffs' claims cannot escape implied preemption. By alleging, at most, that Defendant designed, manufactured, and sold the subject LifeVest in a defective and unreasonably dangerous condition (Pet. ¶¶ 29, 34, 39), Plaintiffs imply that Defendant violated governing FDA requirements and seek to enforce them. But the authority to enforce FDA regulations rests exclusively with the federal government, not private plaintiffs. Plaintiffs' claims, therefore, fail as a matter of law under *Buckman*.

## II.  Even if the claims were not preempted (which they are), Plaintiffs fail to state plausible claims under *Iqbal* and *Twombly*.

The Petition must be dismissed for another reason – it fails to state a claim upon which relief can be granted. Under the standard established in *Iqbal* and *Twombly*, Plaintiffs must provide more than a "formulaic recitation of the elements of a cause of action" or "mere conclusory statements" to survive a motion to dismiss. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. Plaintiffs fall far short of this standard.

**Count I — Manufacturing Defect**. Plaintiffs allege that the subject LifeVest "deviated from its intended design or from otherwise identical products manufactured by ZOLL" and "malfunctioned" by delivering "an inappropriate discharge." (Pet. ¶¶ 29, 11.) But Plaintiffs *never identify the alleged defect, how the subject LifeVest allegedly deviated from FDA manufacturing specifications, nor identify any FDA regulation purportedly violated*. LifeVest carries a known risk, approved by the FDA, of a treatment shock occurring based on a false positive VT or VF rhythm detection and a conscious patient's failure to press the response buttons. Here, Plaintiffs have failed to allege any facts corroborating their claim that the subject LifeVest was defective, other than to allege that a known risk occurred, which is not sufficient to sustain a manufacturing

16

defect claim. *Funk*, 631 F.3d at 782 (holding plaintiff's "res ipsa loquitur" allegations were not sufficient to sustain her manufacturing defect claim). Such generic and conclusory pleadings are not sufficient to state a claim. *See Id.* at 777; *Reddick v. Medtronic, Inc.*, 2022 WL 715494.

**Count II — Design Defect**. Plaintiffs' design defect claim does not specify a purported design defect. This is understandable, as any attempt to do so would be expressly preempted. But it also renders the claim insufficiently pleaded.

**Count III — Failure to Warn**. Plaintiffs allege Defendant failed to provide adequate warnings or instructions "regarding the risk of inappropriate discharge and resulting physical trauma." (Pet. ¶ 39.) Plaintiffs, however, never identify what was inadequate about the warnings or what new or different type of warning could have been provided. Further, LifeVest's FDA-approved warnings plainly warn about the risk of inappropriate treatments. (M. Mims Decl. Ex. 3 at 1-10 (providing that a patient may receive a shock while conscious or while the patient's heart is beating normally if the patient does not utilize LifeVest's response buttons)). Plaintiffs' claim is not only preempted, it is insufficiently pleaded as it only relies on formulaic recitations of a failure to warn claim.

**Counts IV — Nonconformity to Express Warranty**. Plaintiffs' nonconformity to express warranty under La. Rev. Stat. § 9:2800.58 is insufficiently pleaded. The statue requires a plaintiff to identify an express warranty, plead that the express warranty "induced the claimant or another person or entity to use the product" and that the plaintiff's damages were "proximately caused because the express warranty was untrue." *Id*. Here, Plaintiffs never identify any specific representation, plead that they or the prescribing physician relied on said representation, or plead that the representation was in fact untrue. (*See* Pet. ¶¶ 43-47.) This is insufficient to state a claim.

### III. Plaintiff Mark Pellegrin's loss of consortium claim fails because it is derivative of Plaintiffs' preempted and insufficiently pleaded claims.

As the Court is sitting in diversity, Louisiana substantive law applies to Plaintiffs' claims.

*Batts v. Tow-Motor Forklift Co.*, 66 F.3d 743, 750 (5th Cir. 1995). The Louisiana Supreme Court

has expressly held that a loss of consortium claim is derivative of the predicate claim. *Ferrell v*

*Fireman's Fund Ins Co.*, 696 So.2d 569 (La. 1997). Thus, if the claims of Norma Pellegrin are

dismissed on the basis of preemption (as they should be), there can be no derivative claim for loss

of consortium. Accordingly, Plaintiff Mark Pellegrin's claim for loss of consortium cannot survive

the appropriate dismissal of Counts I-IV of the Petition.

### CONCLUSION

Plaintiffs' Petition contains only preempted and nonactionable claims. Accordingly, for the

foregoing reasons, the Court should dismiss all claims against Defendant, without leave to amend.

Respectfully submitted,

Dated: May 11, 2026                    LISKOW & LEWIS, APLC

By: /s/ Michael C. Mims
Michael C. Mims, T.A. (#33991)
Brady M. Hadden (#37708)
Alec Andrade (#38659)
701 Poydras Street, Suite 5000
New Orleans, LA 70139
Telephone: (504) 581-7979
Telefax: (504) 556-4108
E-mail: mmims@liskow.com

Jenny A. Covington
(pro hac vice to be submitted)
Matthew J. Smaron

18

(pro hac vice to be submitted)
**CARLTON FIELDS, P.A.**
80 South Eighth Street
Suite 2800
Minneapolis, MN 55402
612.605.9921
Jcovington@carltonfields.com
msmaron@carltonfields.com

*Counsel for ZOLL Medical Corporation*

## **CERTIFICATION**

I hereby certify that on this 11th day of May, 2026, a copy of the foregoing pleading was

served on all parties of record electronically via the Court's ECF system.


                                    */s/* Michael C. Mims
                                    Michael C. Mims

19