**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| NORMA PELLEGRIN and MARK PELLEGRIN | Civil Action No. 2:26-cv-00830 |
| Plaintiffs, | JUDGE: Lance Africk |
| vs. | MAGISTRATE: Janis van Meerveld |
| ZOLL MEDICAL CORPORATION, | |
| Defendant | |

**<u>PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT ZOLL MEDICAL CORPORATION'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT</u>**

**MAY IT PLEASE THE COURT**

Plaintiffs oppose Defendant ZOLL Medical Corporation's Motion to Dismiss. On March 5, 2025, the LifeVest wearable cardioverter defibrillator worn by Mrs. Pellegrin delivered two inappropriate treatment shocks, causing severe cervical spine injuries. Mrs. Pellegrin was conscious, not experiencing a life-threatening arrhythmia, and did not press the response buttons because she did not hear the alarms or feel the vibration. The shocks caused her neck to snap forward forcefully, resulting in extensive medical treatment.

ZOLL now seeks dismissal on two principal grounds: (1) that Plaintiffs' claims are preempted by the Medical Device Amendments of 1976 (MDA), 21 U.S.C. § 360k(a), and (2) that Plaintiffs have failed to state a claim under Federal Rule of Civil Procedure 12(b)(6). Both contentions fail.

First, ZOLL incorrectly asserts that the LifeVest received premarket approval (PMA) and that all state-law claims are therefore categorically preempted. Even if the device received PMA, a fact disputed by the procedural record, Plaintiffs have adequately plead parallel state-law claims

premised on violations of specific federal requirements, which survive express preemption under *Riegel v. Medtronic, Inc.*[1] Plaintiffs allege that ZOLL violated federal manufacturing requirements, producing a defective device that delivered inappropriate shocks in circumstances where a conforming device would not have done so. These claims enforce federal requirements and do not impose additional or different state-law duties.

Second, Plaintiffs have pleaded factual matter sufficient to state plausible claims for relief under *Ashcroft v. Iqbal*, and *Bell Atl. Corp. v. Twombly*.[2] The Amended Complaint alleges specific facts regarding the device malfunction, Mrs. Pellegrin's injuries, the device's failure to deliver adequate warnings and alarms, and ZOLL's deviation from federal manufacturing standards. These factual allegations, taken as true, support each element of Plaintiffs' Louisiana Products Liability Act (LPLA) claims and Mr. Pellegrin's derivative loss of consortium claim. ZOLL's motion relies on a mischaracterization of both the regulatory pathway for the LifeVest and the legal standard for parallel claims under federal preemption jurisprudence. Plaintiffs respectfully request that this Court deny the motion in its entirety.

## 1.    PREDICATED FACTS

Norma Pellegrin had a history of cardiac disease, including a non-ST elevation myocardial infarction with heart failure. As part of her recovery from this heart attack, one of Mrs. Pellegrin's healthcare providers prescribed a LifeVest wearable cardioverter defibrillator to protect her from sudden cardiac arrest. The LifeVest is designed to monitor the wearer's heart rhythm continuously and to detect life-threatening rapid arrhythmias, specifically ventricular tachycardia (VT) or ventricular fibrillation (VF). When the device detects such an arrhythmia, it issues a series of tactile

---

[1] *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 128 S. Ct. 999 (2008).
[2] *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007).

vibrations and audible alarms to alert the patient. If the patient is conscious, the patient is instructed to press response buttons to cancel the alarm sequence and prevent delivery of a treatment shock.

Mrs. Pellegrin began using the subject LifeVest device as prescribed. On March 5, 2025, while Mrs. Pellegrin was conscious and not experiencing life-threatening arrhythmia, the LifeVest device administered two inappropriate treatment shocks. The device's alarm sequence failed to provide adequate notice to Mrs. Pellegrin that a shock was imminent. Mrs. Pellegrin did not hear the alarms or feel the vibration and therefore did not press the response buttons. The two shocks caused Mrs. Pellegrin's neck to snap forward, causing immediate pain to her neck and spine. She sought treatment at Thibodaux Regional Health System that same day. Medical records from that visit describe the event as involving a "defective lifevest" and "inappropriate life vest discharge."

Following the March 5, 2025 incident, Mrs. Pellegrin underwent extensive medical treatment for her injuries. On April 25, 2025, an MRI revealed multilevel cervical pathology. On June 17, 2025, Mrs. Pellegrin was evaluated by a spine specialist. On July 7, 2025, she received treatment with a cervical epidural steroid injection to address her ongoing pain and cervical spine injuries.

The LifeVest is a Class III medical device subject to federal manufacturing requirements, including Good Manufacturing Practices (GMP) and Medical Device Reporting (MDR) regulations.[3] The FDA's Summary of Safety and Effectiveness Data for the LifeVest expressly identifies "inappropriate shock" as a known potential adverse event and states: "When the device detects an arrhythmia, it also instructs the patient to stop the impending shock by pressing the response buttons to avoid receiving a shock while conscious because of the pain associated with the shock."

---

[3] *Hughes v. Boston Scientific Corp.*, 631 F.3d 762, 765 (5th Cir 2011).

The device's FDA-approved labeling warns: "Press and hold both response buttons on the Alarm Module at the same time if you hear alarms, feel a vibration, and receive a message telling you to 'Respond.' If you do not, you may receive a defibrillating electrical shock while conscious." The labeling further warns: "Certain environments or situations you encounter that are loud and have high vibration could affect the LifeVest. A high vibration environment may result in an inappropriate treatment."

## 2.     LEGAL STANDARD.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests whether the complaint states a claim upon which relief can be granted.[4] To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."[5] A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.[6] The court must accept all well-pleaded factual allegations as true and view them in the light most favorable to the plaintiff.[7] However, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[8] The court is not required to accept legal conclusions couched as factual allegations.[9]

The MDA contains an express preemption provision at 21 U.S.C. § 360k(a), which provides that no state may establish or continue in effect any requirement "which is different from, or in addition to, any requirement applicable under this chapter to the device" and "which relates to the safety or effectiveness of the device."[10] The Supreme Court in *Riegel* established a two-part

---

[4] *Twombly*, 550 U.S. at 570.
[5] *Id.*
[6] *Iqbal*, 556 U.S. at 678.
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] 21 USCS § 360k; *Wildman v. Medtronic, Inc.*, 874 F.3d 862, 867-868 (5th Cir. 2017).

test for express preemption: (1) whether the Federal Government has established requirements applicable to the device, and (2) whether the state-law claims impose requirements "different from, or in addition to" the federal requirements and relate to safety and effectiveness.[11] State common-law claims are not preempted if they are genuinely equivalent to, or parallel with, federal requirements.[12] "Nothing in § 360k denies [a state] the right to provide a traditional damages remedy for violations of common-law duties when those duties parallel federal requirements."[13] A parallel claim is one that is "premised entirely on violation of the applicable federal requirements."[14] To plead a parallel claim, a plaintiff must allege that the manufacturer violated a specific federal requirement applicable to the device.[15]

However, the Fifth Circuit has recognized that "much of the product-specific information about manufacturing needed to investigate a medical device claim fully is kept confidential by federal law," and courts must be mindful of this limitation when evaluating the specificity of pleadings at the motion to dismiss stage. [16]

3.    **ARGUMENT**

**A. PLAINTIFFS HAVE ADEQUATELY PLEADED PARALLEL STATE-LAW CLAIMS THAT ARE NOT EXPRESSLY PREEMPTED UNDER *RIEGEL*.**

ZOLL contends that the LifeVest received full PMA and that this fact is established by public FDA records of which the Court may take judicial notice. ZOLL asserts that Plaintiffs' allegation that the device received 510(k) clearance is "demonstrably false" and "contradicted by public FDA records." This factual dispute cannot be resolved on a motion to dismiss. While courts may take judicial notice of public records, judicial notice does not convert disputed facts into

---

[11] *Riegel*, 552 U.S. at 321-22.
[12] *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 495 (1996).
[13] *Id.* at 501.
[14] *Hughes,* 631 F.3d at 770.
[15] *Bass v. Stryker Corp.*, 669 F.3d 501, 510 (5th Cir. 2012).
[16] *Id.* at 558.

undisputed facts binding on the plaintiff at the pleading stage. The Amended Complaint alleges, "upon information and belief," that the LifeVest received marketing authorization through the 510(k) premarket notification process. ZOLL has provided FDA documents suggesting PMA approval. However, the existence of these documents does not conclusively establish the regulatory pathway for the specific LifeVest device worn by Mrs. Pellegrin on March 5, 2025, particularly where subsequent supplements and device modifications may affect the applicable regulatory framework.

Moreover, even if the device received PMA, Plaintiffs' parallel claims are not preempted. The Fifth Circuit has held that state negligence claims premised on a manufacturer's failure to abide by FDA-approved manufacturing specifications survive express preemption even for PMA devices.[17] Plaintiffs' claims fall squarely within this category.

Plaintiffs allege that the subject LifeVest "deviated in a material way from ZOLL's own specifications and performance standards" and that "a properly functioning LifeVest manufactured in accordance with ZOLL's specifications and performance standards would not have delivered shocks to Norma Pellegrin on March 5, 2025." These allegations satisfy the pleading standard for parallel manufacturing defect claims. The key distinction in manufacturing defect cases is "the existence of a manufacturing defect caused by a violation of federal regulations and allegations connecting a defect in the manufacture of the specific device to that plaintiff's specific injury."[18] Plaintiffs have alleged precisely this. The device delivered inappropriate shocks when Mrs. Pellegrin was not experiencing life-threatening arrhythmia, the device failed to provide adequate alarms and vibrations to alert her, and the device's malfunction was caused by ZOLL's deviation from federal manufacturing requirements.

---

[17] *Hughes*, 631 F.3d at 770.
[18] *Bass*, 669 F.3d at 510.

ZOLL argues that these allegations are "fatally deficient" because Plaintiffs do not identify any specific manufacturing specification or federal regulation that ZOLL violated. This argument ignores the realities of medical device litigation and the confidentiality of manufacturing specifications. As the Fifth Circuit recognized in *Bass*, "much of the product-specific information about manufacturing needed to investigate [a medical device claim] fully is kept confidential by federal law."[19] Courts must therefore apply a reasonable pleading standard that does not require plaintiffs to plead confidential manufacturing specifications that are uniquely within the defendant's possession.

Medical records from Mrs. Pellegrin's treatment at Thibodaux Regional Health System on March 5, 2025, describe the event as involving a "defective lifevest" and "inappropriate life vest discharge." While ZOLL dismisses these records as "lay descriptions" by treating physicians, they constitute factual allegations that, when accepted as true, support the inference that the device was defective and deviated from federal manufacturing standards.

ZOLL's reliance on *Funk v. Stryker Corp.* is misplaced.[20] In *Funk*, the court held that the plaintiff's complaint was "impermissibly conclusory and vague" because it "d[id] not specify the manufacturing defect" and "d[id] not specify a causal connection between the failure of the specific manufacturing process and the specific defect in the process that caused the personal injury."[21]

Here, by contrast, Plaintiffs have alleged a specific defect that the device delivered inappropriate shocks when Mrs. Pellegrin was not experiencing a life-threatening arrhythmia and failed to provide adequate alarms, alleged a causal connection that the defect caused Mrs.

---

[19] *Bass*, 669 F.3d at 510.
[20] *Funk v. Stryker Corp.*, 631 F.3d 777 (5th Cir. 2011)
[21] *Funk*, 631 F.3d at 782. Funk v. Stryker Corp., 631 F.3d 777 (5th Cir. 2011)

Pellegrin's cervical spine injuries, and alleged a basis for inferring deviation from federal requirements in that a conforming device would not have delivered shocks in these circumstances.

ZOLL argues that "unintended treatment shocks are a known and FDA-reviewed characteristic of LifeVest's approved design" and that "the occurrence of a treatment shock to a conscious patient who does not press the response buttons is not per se evidence that the device deviated from its manufacturing specifications." This argument confuses the known risk of inappropriate shocks with the specific circumstances alleged here. The FDA's Summary of Safety and Effectiveness Data identifies "inappropriate shock" as a potential adverse event. The Summary also states that the device is designed to issue warnings so that a conscious patient can press the response buttons to cancel the treatment. The design anticipates that a conscious patient will respond to these warnings.

Plaintiffs allege that the device failed to provide adequate warnings as Mrs. Pellegrin did not hear the alarms or feel the vibration. This failure is not a characteristic of the FDA-approved design. Rather, it is evidence of a defect in the specific device worn by Mrs. Pellegrin. ZOLL's argument that the device "did exactly what it was designed and approved to do, when it detected a rhythm, issued warnings, and delivered treatment" assumes facts not established at this stage. Plaintiffs allege that the device did *not* issue adequate warnings and that a properly functioning device would have provided alarms and vibrations sufficient to alert a conscious patient. These are factual disputes that cannot be resolved on a motion to dismiss.

The FDA's approval of the LifeVest did not include a requirement that the device deliver shocks to conscious patients who fail to hear alarms or feel vibrations due to inadequate alarm systems. To the contrary, the FDA approved a device that includes an alarm sequence specifically

designed to prevent such outcomes. Plaintiffs' allegations that the alarm sequence failed support the inference that the device deviated from federal requirements.

Plaintiffs allege that the LifeVest was unreasonably dangerous in design and identify categories of alternative designs that would have prevented Mrs. Pellegrin's injuries. These alternatives include: (1) improved arrhythmia detection algorithms with multiple verification steps before shock delivery, (2) enhanced patient alert systems, (3) redundant sensor systems, (4) design features that reduce the physical force of discharge, and (5) automatic device shutdown mechanisms when malfunction is detected. ZOLL argues that these alternative designs "go directly to elements of LifeVest's design that were expressly reviewed and approved by the FDA through the PMA process" and would impose requirements "different from, or in addition to" federal requirements. This argument fails for two reasons.

First, Plaintiffs' design defect claim can be construed as a parallel claim premised on ZOLL's failure to implement design features required by federal law or to follow federal design standards. The FDA requires medical device manufacturers to conduct risk analysis and to implement risk controls to reduce the likelihood of foreseeable harms. If ZOLL failed to conduct adequate risk analysis or to implement required risk controls, Plaintiffs' design defect claim enforces federal requirements rather than imposing additional state-law duties.

Second, even if some aspects of the design defect claim would impose requirements different from federal requirements, the claim is not entirely preempted if it can proceed on a parallel theory. Courts analyze preemption on a claim-by-claim basis, and a claim that can proceed on both preempted and non-preempted theories should not be dismissed in its entirety at the pleading stage. Plaintiffs are entitled to discovery to develop the factual record regarding which

design features were required by federal law and which alternative designs ZOLL considered during the design process.

Louisiana Revised Statutes § 9:2800.56 provides that a product is unreasonably dangerous in design if "there existed an alternative design for the product that was capable of preventing the claimant's damage" and "the likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design."[22] This standard overlaps substantially with federal risk analysis requirements. A product that fails to meet Louisiana's design defect standard may also fail to meet federal design requirements.

Plaintiffs allege that ZOLL failed to provide adequate warnings about the risk and frequency of inappropriate discharge, the severe physical trauma that can result, and the need for additional monitoring. ZOLL argues that the FDA-approved labeling already warns about the risk of unintended treatment shocks and that Plaintiffs' claim seeking additional or different warnings is expressly preempted. This argument misconstrues Plaintiffs' failure to warn claim. Plaintiffs do not seek to impose a general duty to provide warnings beyond those required by federal law. Rather, Plaintiffs allege that ZOLL violated federal warning requirements by failing to provide warnings adequate to the specific risks presented by the device's alarm and detection systems.

If the FDA-approved labeling was inadequate to warn of known risks, ZOLL had a duty under federal law to supplement the labeling or to seek FDA approval for revised labeling. Moreover, Louisiana Revised Statutes § 9:2800.57(C) imposes a duty on manufacturers who acquire post-market knowledge of a characteristic that may cause damage to use reasonable care to provide adequate warnings.[23] If ZOLL acquired knowledge after FDA approval that the device's

---

[22] La. R.S. § 9:2800.56
[23] La. R.S. § 9:2800.57

alarm system was inadequate to alert conscious patients in certain circumstances, ZOLL had both a federal and state-law duty to warn of this risk. Plaintiffs' claim that ZOLL failed to provide such warnings is a parallel claim that enforces federal post-market reporting and warning obligations.

The FDA's Medical Device Reporting (MDR) regulations require manufacturers to report adverse events and malfunctions to the FDA. *Hughes v. Boston Scientific Corp.,* held that a failure to warn claim premised on the manufacturer's violation of MDR regulations is not preempted.[24] The court explained that "a factfinder could infer that a manufacturer's failure to provide this information as required by FDA regulations is a parallel violation of the state duty to provide reasonable and adequate information about a device's risks."[25] Plaintiffs' failure to warn claim is similarly premised on ZOLL's alleged failure to comply with federal reporting and warning requirements.

Plaintiffs allege that ZOLL made express warranties that "the device would only deliver shocks when life-threatening arrhythmias are detected" and that "the device would function safely during normal use." ZOLL argues that these warranties are not found in the FDA-approved labeling and that the labeling warns of the possibility of unintended shocks. Plaintiffs' express warranty claim is based on representations made in the device's labeling, instructions for use, and marketing materials, all of which were subject to FDA review and approval. If ZOLL represented that the device would function safely and would only deliver shocks when life-threatening arrhythmias are detected, and if these representations were false or misleading, ZOLL violated both federal and state-law prohibitions on false and misleading device labeling.

---

[24] *Hughes*, 631 F.3d at 770.
[25] *Id.*

The FDA prohibits device labeling that is false or misleading in any particular.[26]  If ZOLL's labeling created the impression that the device would function safely and would only shock patients experiencing life-threatening arrhythmias, when in fact the device was prone to delivering inappropriate shocks due to inadequate alarm systems, this labeling violated federal law. Plaintiffs' express warranty claim enforces this federal prohibition and is therefore a parallel claim. Discovery will establish the specific representations ZOLL made in its labeling and marketing materials and whether those representations were consistent with the device's actual performance. At the pleading stage, Plaintiffs have adequately alleged that ZOLL made express warranties that were untrue and that induced Mrs. Pellegrin (or her prescribing physician) to use the device.

## B.    PLAINTIFFS' CLAIMS ARE NOT IMPLIEDLY PREEMPTED UNDER BUCKMAN.

ZOLL argues that Plaintiffs' claims are impliedly preempted under *Buckman Co. v. Plaintiffs' Legal Comm.*, because they "exist solely by virtue of the FDCA framework" and seek to enforce FDA requirements that are the exclusive domain of the federal government.[27] This argument misunderstands *Buckman*. The Supreme Court in *Buckman* held that state-law fraud-on-the-FDA claims are impliedly preempted because they do not have a parallel state-law duty and exist solely to punish fraud on a federal agency.[28] The Court specifically distinguished fraud-on-the-FDA claims from traditional state-law tort claims that have a parallel state-law duty.[29]

Here, Plaintiffs assert traditional state-law products liability claims under the Louisiana Products Liability Act. Louisiana has long recognized duties of manufacturers to produce products free from manufacturing defects, to design products that are not unreasonably dangerous, to

---

[26] 21 U.S.C. § 352(a).
[27] *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 121 S. Ct. 1012 (2001)
[28] *Buckman*, 531 U.S. at 349-50.
[29] *Id.*

provide adequate warnings, and to honor express warranties. These are well-established state-law duties that exist independently of federal law. Plaintiffs' claims enforce these state-law duties by showing that ZOLL violated both state and federal requirements.

The Fifth Circuit in *Hughes* rejected a *Buckman* preemption argument nearly identical to ZOLL's argument here.[30] The court held that the plaintiff's negligent failure to warn claim was "not impliedly preempted by federal law" because it was premised on "breach of a well-recognized duty owed to her under state law—the duty of a manufacturer to use due care in manufacturing a medical device."[31] The court explained: "She may do so as long as she can show that she was harmed by a violation of applicable federal law."[32]

Plaintiffs' claims are not fraud-on-the-FDA claims. Plaintiffs do not allege that ZOLL made misrepresentations to the FDA to obtain device approval. Rather, Plaintiffs allege that ZOLL violated federal manufacturing, design, warning, and labeling requirements in producing and marketing the device, and that these violations also constitute violations of Louisiana state law. These are precisely the type of parallel claims that *Buckman* preserved from implied preemption.

### C.  PLAINTIFFS HAVE STATED PLAUSIBLE CLAIMS UNDER THE TWOMBLY/IQBAL STANDARD.

Even if the Court were to find that preemption issues remain unresolved at this stage, Plaintiffs have stated plausible claims for relief under Federal Rule of Civil Procedure 8(a) and the *Twombly*/*Iqbal* pleading standard.

To state a claim for manufacturing defect under Louisiana Revised Statutes § 9:2800.55, Plaintiffs must allege that the product was unreasonably dangerous in construction or composition

---

[30] *Hughes*, 631 F.3d at 770
[31] *Id*.
[32] *Id.*

at the time it left ZOLL's control.[33] Plaintiffs have alleged that the subject LifeVest delivered two inappropriate shocks to Mrs. Pellegrin when she was conscious and not experiencing a life-threatening arrhythmia, that the device failed to provide adequate alarms and vibrations to alert her to the impending shocks, and that these defects were caused by ZOLL's deviation from its own manufacturing specifications and federal manufacturing requirements. These allegations are not conclusory. Plaintiffs have identified the specific defect (inappropriate shock delivery coupled with inadequate alarm system), the causal mechanism (deviation from manufacturing specifications), and the resulting injury (cervical spine damage requiring extensive medical treatment). Medical records corroborate that Mrs. Pellegrin's treating physicians considered the device to be defective.

ZOLL argues that Plaintiffs' theory is a "malfunction theory" or "res ipsa" argument that is insufficient under *Funk*. This characterization is incorrect. Plaintiffs do not rely solely on the occurrence of an adverse event to infer a defect. Rather, Plaintiffs allege specific facts showing that the device's alarm system failed to function as designed, that this failure evidences a manufacturing deviation, and that the deviation caused Mrs. Pellegrin's injuries. These allegations permit a reasonable inference of liability and satisfy the *Twombly/Iqbal* standard.

To state a claim for design defect under Louisiana Revised Statutes § 9:2800.56, Plaintiffs must allege that an alternative design existed that was capable of preventing the damage and that the likelihood and gravity of the damage outweighed the burden of adopting the alternative design.[34] Plaintiffs have alleged six categories of alternative designs and have explained that these designs would have prevented the inappropriate shocks that injured Mrs. Pellegrin. ZOLL argues that Plaintiffs "fail to allege any facts suggesting that these alternative designs were feasible at the

---

[33] La. R.S. § 9:2800.55
[34] La. R.S. § 9:2800.56

time of LifeVest's FDA approval, that they would have been at least as safe and effective as the approved design, or that ZOLL could have adopted them without altering the PMA-approved design." This argument imposes a summary judgment standard at the pleading stage.

Plaintiffs are not required to plead evidence of feasibility or to negate all possible defenses. Plaintiffs need only allege facts sufficient to support a plausible inference that a safer alternative design existed. The Amended Complaint alleges that the device's alarm system was inadequate, that enhanced alert systems and redundant sensor systems would have prevented the inappropriate shocks, and that ZOLL could have implemented these design features without compromising the device's effectiveness. These allegations are sufficient to state a plausible design defect claim. Discovery will develop the factual record regarding the feasibility and effectiveness of alternative designs.

To state a claim for failure to warn under Louisiana Revised Statutes § 9:2800.57, Plaintiffs must allege that the product possessed a characteristic that may cause damage, that ZOLL failed to use reasonable care to provide an adequate warning of such characteristic and its danger, and that the warning deficiency caused Mrs. Pellegrin's injuries.[35] Plaintiffs have alleged that ZOLL failed to provide adequate warnings about the risk and frequency of inappropriate discharge, the severe physical trauma that can result, and the need for additional monitoring. ZOLL argues that the FDA-approved labeling already warns of the risk of unintended shocks and that Plaintiffs' claim reduces to an assertion that "the warnings were not 'enough.'"

However, Plaintiffs have alleged specific inadequacies in the warnings provided. Specifically, that ZOLL failed to warn that the alarm system might not adequately alert a conscious patient, that the device might deliver shocks even when the patient is not experiencing a life-

---

[35] La. R.S. § 9:2800.57

threatening arrhythmia, and that the physical force of the shocks can cause severe cervical spine injuries. These are factual allegations that, if proven, would support a finding that the warnings were inadequate under both state and federal law.

To state a claim for express warranty under Louisiana Revised Statutes § 9:2800.58, Plaintiffs must allege that ZOLL made an express warranty, that the warranty was untrue, and that the warranty induced Mrs. Pellegrin (or her prescribing physician) to use the device.[36] Plaintiffs have alleged that ZOLL warranted that the device would only deliver shocks when life-threatening arrhythmias are detected and that the device would function safely during normal use. ZOLL argues that Plaintiffs "never identify any specific representation" and that the allegations are "insufficiently pleaded."

However, at the pleading stage, Plaintiffs need not identify every document containing the alleged warranties. Plaintiffs have alleged that ZOLL made representations in its labeling, instructions for use, and marketing materials, and that these representations were false. Discovery will establish the specific content of these materials. The fact that ZOLL's labeling includes warnings about the risk of inappropriate shocks does not negate the possibility that ZOLL also made express warranties regarding the device's safety and effectiveness. A manufacturer can simultaneously warn of risks and warrant that the device will function safely when used as directed. If ZOLL's warranties were false or misleading, Plaintiffs have stated a plausible express warranty claim.

Mr. Pellegrin's loss of consortium claim is derivative of Mrs. Pellegrin's underlying products liability claims. Louisiana law recognizes that a loss of consortium claim is derivative

---

[36] La. R.S. § 9:2800.57

and stands or falls with the predicate claim.[37] Because Plaintiffs have adequately stated underlying

products liability claims, Mr. Pellegrin's derivative loss of consortium claim survives dismissal.

### D.   ZOLL'S CHARACTERIZATION OF THE REGULATORY PATHWAY DOES NOT ESTABLISH CATEGORICAL PREEMPTION.

ZOLL's entire preemption argument rests on the premise that the LifeVest received full

PMA and that PMA devices are categorically subject to broader preemption than 510(k) devices.

Even accepting ZOLL's characterization of the regulatory pathway, this premise is legally

incorrect. The Supreme Court in *Riegel* did not hold that all state-law claims involving PMA

devices are preempted.[38] Rather, *Riegel* held that state-law claims are preempted only if they

impose requirements "different from, or in addition to" federal requirements.[39] The Court

specifically preserved parallel claims that enforce federal requirements.[40] The Fifth Circuit has

consistently applied this framework to permit parallel claims involving PMA devices.

In *Hughes*, the court held that negligent manufacturing claims based on violations of FDA

Good Manufacturing Practices survive preemption even for Class III PMA devices.[41] In *Bass*, the

court held that manufacturing defect claims alleging violations of federal manufacturing

specifications survive preemption.[42] The Seventh Circuit reached the same conclusion in *Bausch*,

holding that "state negligence claims premised on a defendant manufacturer's failure to abide by

the FDA's approved manufacturing specifications survive express preemption."[43]

ZOLL cites to decisions from Illinois state court and other jurisdictions suggesting broader

preemption. However, these decisions are not binding on this Court and are inconsistent with Fifth

---

[37] *Ferrell v. Fireman's Fund Ins. Co.*, 96-3028 (La. 7/1/97) 696 So.2d 569.
[38] *Riegel*, 552 U.S. at 321-322
[39] *Id.*
[40] *Id.* at 330.
[41] *Hughes*, 631 F.3d at 776.
[42] *Bass,* 669 F.3d at 518.
[43] *Bausch v. Stryker Corp.*, 630 F.3d 546 (7th Cir. 2010)

Circuit precedent. This Court must follow *Hughes*, *Bass*, and controlling Fifth Circuit authority recognizing that parallel claims survive preemption regardless of whether the device received PMA or 510(k) clearance.

Moreover, ZOLL's reliance on the Supreme Court's recent decision in *Monsanto Co. v. Durnell*, 2026 U.S. LEXIS 2721 (U.S. June 25, 2026), is misplaced.[44] *Durnell* addressed preemption under the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), not the MDA. While *Durnell* confirmed that preemption clauses using "materially identical" language to § 360k(a) are broadly construed, the decision did not overrule *Riegel*'s preservation of parallel claims or the Fifth Circuit's application of *Riegel* in *Hughes* and *Bass*. The *Durnell* Court specifically noted that its holding was consistent with *Riegel*.[45]

### E.   THE COURT SHOULD DENY DISMISSAL AND PERMIT DISCOVERY ON PARALLEL CLAIM THEORIES.

Even if the Court finds some uncertainty regarding whether Plaintiffs' claims are parallel claims, dismissal at the pleading stage is inappropriate. Plaintiffs are entitled to discovery to develop the factual record regarding ZOLL's compliance with federal manufacturing, design, warning, and labeling requirements. The confidentiality of FDA manufacturing specifications makes it nearly impossible for plaintiffs to plead with complete specificity at the outset of litigation. As the Fifth Circuit recognized in *Bass*, "much of the product-specific information about manufacturing needed to investigate a medical device claim fully is kept confidential by federal law."[46] Courts must therefore permit reasonable discovery before dismissing claims on preemption grounds.[47]

---

[44] *Monsanto Co. v. Durnell*, 2026 U.S. LEXIS 2721, 2026 LX 336645, 56 ELR 20085 (U.S. June 25, 2026), cited by ZOLL as *Monsanto Co. v. Durnell*, 609 U.S. ____, 2026 WL 1825691 (U.S. June 25, 2026).
[45] *Durnell*, 2026 U.S. LEXIS 2721, at *8.
[46] *Bass*, 669 F.3d at 510.
[47] *Id.*

Plaintiffs have alleged sufficient facts to support a plausible inference that ZOLL violated federal requirements. Plaintiffs allege that the device delivered inappropriate shocks, the alarm system failed to provide adequate notice, and a conforming device would not have malfunctioned in this manner. Discovery will establish the specific manufacturing specifications applicable to the LifeVest, the specific federal regulations governing the device's alarm and detection systems, and whether ZOLL deviated from these requirements in manufacturing the device worn by Mrs. Pellegrin. If, after discovery, the factual record establishes that ZOLL complied with all federal requirements and that the device performed as designed, ZOLL may renew its preemption arguments on summary judgment. But at this early stage, with limited information available to Plaintiffs, dismissal would be premature.

**4.      CONCLUSION.**

 For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendant ZOLL Medical Corporation's Motion to Dismiss Plaintiffs' Amended Complaint in its entirety. Plaintiffs have adequately pleaded parallel state-law claims premised on violations of federal manufacturing, design, warning, and labeling requirements. These claims are not preempted under *Riegel* or *Buckman*. Plaintiffs have also stated plausible claims for relief under the *Twombly*/*Iqbal* standard. Discovery is necessary to develop the factual record regarding ZOLL's compliance with federal requirements and the specific defects in the device that caused Mrs. Pellegrin's injuries.

Respectfully submitted,

GERALD F. ARCENEAUX, APLC

*/s/ Gerald F. Arceneaux*

_____
GERALD F. ARCENEAUX (#28866)
Post Office Box 848
Bourg, LA 70343-0848
Telephone: (985) 594-4199
Facsimile: (985) 594-1212
Email: geraldarceneaux@outlook.com

*Counsel for Plaintiffs,*
*Norma and Mark Pellegrin*

## CERTIFICATION

I hereby certify that on this 13th day of July 2026, a copy of the foregoing pleadings was served on all parties of record electronically via the Court's ECF system.

*/s/ Gerald F. Arceneaux*

_____
Gerald F. Arceneaux