**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| NORMA PELLEGRIN AND MARK PELLEGRIN, | Civil Action No. 2:26-cv-00830 |
| Plaintiffs, | Judge Lance M. Africk |
| vs. | Magistrate Judge Janis van Meerveld |
| ZOLL MEDICAL CORPORATION, | **DEFENDANT ZOLL MEDICAL CORPORATION'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT** |
| Defendant. | |

Plaintiffs' opposition confirms rather than cures the deficiencies of their Amended Complaint. In response to the argument that LifeVest® received full Premarket Approval ("PMA") and not 510(k) clearance, Plaintiffs suggest the Court cannot take judicial notice of the FDA's own PMA database on a motion to dismiss—a position that is both legally incorrect and verifiably false. In response to the argument that Plaintiffs have failed to identify any specific federal requirement ZOLL violated, Plaintiffs retreat to the very pleading deficiencies that render their claims preempted and insufficiently alleged: (1) reliance on ZOLL's "confidential manufacturing specifications" as a proxy for federal requirements, and (2) the introduction in briefing of conclusory factual theories not pleaded in the Amended Complaint. And in attempting to recast their preempted design defect claim as something other than a challenge to LifeVest's FDA-approved design, Plaintiffs argue a theory—that Mrs. Pellegrin was not adequately alerted—that the Amended Complaint expressly contradicts. The motion to dismiss should be granted.

**ARGUMENT**

**A.  The FDA's 510(k) Database Establishes, as a Matter of Judicially Noticeable Public Record, That There Are Zero Entries for LifeVest—Confirming Full PMA.**

Plaintiffs argue that ZOLL's invocation of judicial notice to establish LifeVest's PMA status transforms this Rule 12 motion into a summary judgment proceeding, and that their 510(k)

145354355.5

allegation pleaded "upon information and belief" creates a factual dispute the Court cannot resolve at the pleading stage. Both arguments fail.

As a threshold matter, Plaintiffs' "upon information and belief" allegation that the LifeVest received 510(k) clearance is not a factual allegation the Court is required to accept as true—it is a legal conclusion. The Fifth Circuit reached this conclusion on materially identical facts in *Bass*: the court held that a plaintiff's allegation that a device component was not subject to PMA was a legal conclusion, not a factual allegation, and the district court was therefore not required to credit it where publicly available FDA documents established PMA approval. *Bass v. Stryker Corp.*, 669 F.3d 501, 507–08 (5th Cir. 2012).

This case presents precisely the circumstances *Bass* described. The Court may—and should—take judicial notice of the FDA's publicly available PMA database and 510(k) database. Courts in this district and the Fifth Circuit have uniformly recognized that FDA regulatory records, including PMA approval letters and PMA databases, are public records appropriate for judicial notice at the motion to dismiss stage without converting the motion to one for summary judgment.[1]

---

[1] The Court may take judicial notice of public records in deciding a motion to dismiss, without converting the motion to dismiss to a motion for summary judgment. *See Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (finding that the district court appropriately used judicial notice to take notice of publicly available documents from the FDA, including a grant of PMA, and appropriately treated the motion as a Rule 12(b) motion to dismiss); *see also Celino v. Biotronik, Inc.*, 536 F. Supp. 3d 89, 101 (E.D. La. 2021); *Doucet v. Abbot Laboratories, Inc.*, No. 25-405, 2025 WL 1548534, at *7 (E.D. La. May 29, 2025) ("[T]he Court will take judicial notice of the fact that the [device] was approved by the FDA vis-à-vis the PMA process and received Class III status. The FDA documentation provided by [defendants] in support bears sufficient indicia of reliability, such that its consideration at this stage in the proceedings is fair as to all the parties. Indeed, other courts routinely take judicial notice of PMA approval letters for Class III medical devices when deciding preemption issues at the motion to dismiss stage"); *Scianneaux v. St. Jude Medical, S.C.*, 961 F. Supp.2d 808, 812 (E.D. La. 2013) ("The Court has taken judicial notice of the FDA's website, which indicates that the [device] underwent the FDA's pre-market approval process"); *Armstrong v. ABC Corp.*, No. 1:21-CV-04368, 2023 WL 6063806, at *7, *7 n.7 (W.D. La. Aug. 21, 2023) (judicially noticing device PMA); *Richardson v. Tandem Diabetes Care, Inc.*, No. 2:21-CV-03522, 2023 WL 2393692, at *2, *2 n.7 (W.D. La. March 7, 2023) (judicially noticing device PMA); *McBride v. Medtronic, Inc.*, No. 13-377, 2013 WL 3491085, at *2 (W.D. La. July 10, 2013) ("we hereby take judicial notice of the FDA information . . . verifying that the [device] is a Class III PMA device").

The record before this Court already contains affirmative evidence of PMA. The FDA's PMA approval letter for LifeVest, PMA No. P010030, dated December 18, 2001, is a public record attached to the Declaration of Michael Mims (Doc. 8-3) and properly before the Court on this motion. The FDA's online PMA database—likewise a public record (Doc. 8-6)—confirms not only that the LifeVest received initial PMA approval but that it has since submitted and received over 199 PMA Supplements, each separately reviewed and approved by the FDA. Every one of those supplements is a product of the rigorous, device-specific FDA oversight that becomes part of a PMA device and that triggers express preemption under *Riegel*. At least one federal court has already taken notice of this record and held accordingly: *Croci v. ZOLL Medical Corp.*, No. 24-CV-02137-NSR, 2025 WL 2307728, at \*4 (S.D.N.Y. Aug. 11, 2025), recognized that "LifeVest is a Class III medical device that has received PMA"—a holding that tracks the FDA's own public record and that Plaintiffs offer no basis to distinguish.

Against this affirmative record and precedent, Plaintiffs' "upon information and belief" allegation of 510(k) clearance is not merely unsupported—it is refuted by a second independent public record. The FDA's 510(k)[2] database contains zero entries for the LifeVest:



---

[2] FDA 510(k) database, publicly available at https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfpmn/pmn.cfm (last accessed July 14, 2026).

145354355.5

That absence is itself a judicially noticeable public fact that corroborates the PMA approval letter, the PMA supplement history, and the *Croci* holding.

Rule 11 of the Federal Rules of Civil Procedure imposes on counsel a duty to conduct a reasonable pre-filing investigation of the factual contentions in a pleading. Fed. R. Civ. P. 11(b)(3). A simple search of the FDA's publicly accessible 510(k) database would have confirmed, before the Amended Complaint was filed, that no 510(k) clearance exists for LifeVest. And even a cursory review of the judicially noticeable documents and case citations in ZOLL's motion would have confirmed PMA clearance for LifeVest. Plaintiffs' persistence in that allegation—now in opposition briefing—serves only to obscure the governing legal framework and delay decision on the actual preemption question. It should not be countenanced by the Court.

## B. Plaintiffs Cannot Substitute ZOLL's Confidential Manufacturing Specifications for a Specific Federal Requirement.

Plaintiffs' principal response to the preemption argument on their manufacturing defect claim is that they cannot identify the specific federal requirement ZOLL violated because ZOLL's manufacturing specifications are confidential under federal law. That argument does not save the claim; it confirms it is preempted.

The standard for pleading a parallel manufacturing defect claim that survives express preemption is well established in the Fifth Circuit: the plaintiff must allege that the manufacturer violated a particular federal specification applicable to the device. *Funk v. Stryker Corp.*, 631 F.3d 777, 782 (5th Cir. 2011). Federal manufacturing specifications—like those in the Quality Management System Regulation ("QMSR"), and the device-specific requirements imposed through PMA—are not confidential. They are publicly available through the FDA's PMA database. ZOLL's internal manufacturing specifications, by contrast, are ZOLL's own proprietary documents. They are neither federal requirements nor the benchmark for a parallel claim.

4

Plaintiffs' Amended Complaint does not allege any violation of a particular federal specification applicable to LifeVest; instead, Plaintiffs' opposition tries to evade dismissal and pursue discovery by arguing the subject LifeVest device departed from ZOLL's confidential manufacturing processes.  But a manufacturing defect claim premised on an unspecified deviation from a manufacturer's proprietary specifications, without more, does not enforce a federal requirement—it seeks to impose a state-law duty based on the manufacturer's own internal standards, a theory expressly rejected as insufficient to plead a parallel claim. *See Funk*, 631 F.3d at 782 (upholding dismissal where complaint failed to identify how a Class III device deviated from the FDA approved manufacturing process). Plaintiffs must identify a federal requirement ZOLL violated. They have not done so and cannot use inaccessibility of confidential proprietary documents as a substitute for the required federal specification.

Plaintiffs cite *Bass*, for the proposition that courts must apply a relaxed pleading standard in medical device cases given the confidentiality of manufacturing information. But *Bass* does not stand for the proposition that a plaintiff may plead a parallel claim without identifying any federal requirement at all. *Bass*, 669 F.3d 501. Rather, *Bass* requires that the plaintiff allege a specific defect, a causal connection, and a basis for inferring deviation from federal—not merely internal proprietary—requirements. *Id.* at 509–10. Plaintiffs have alleged no violation of any federal regulation—not a single provision of the QMSR, not a condition of PMA No. P010030, not a provision of the MDR regulations. The opposition's reliance on manufacturing specification confidentiality is a concession that the subject LifeVest did not deviate from federal specifications, not an argument that avoids preemption.

Neither *Bass* nor *Hughes* rescues Plaintiffs' claim. In *Hughes v. Boston Scientific Corp.*, the plaintiff survived preemption because she produced extensive evidence—including a

5

company-developed reporting algorithm, expert testimony, and an FDA directive letter—that Boston Scientific had violated the plain text of specific MDR regulations requiring the reporting of serious injuries. 631 F.3d 762, 773–74. The court's holding was expressly tethered to identified federal regulations (21 C.F.R. § 803.50(a)) and evidence that the FDA itself had disapproved of the manufacturer's practices. *Id.* Here, Plaintiffs have identified no FDA regulation ZOLL violated, offered no expert opinion that any specific provision was breached, and pointed to no FDA communication suggesting noncompliance. *Hughes* thus cuts squarely against Plaintiffs' claims: it confirms that a parallel claim requires identification of the federal requirement and factual support for the violation, neither of which is present here. In *Bass*, the plaintiff similarly anchored his parallel claim to specific federal provisions—21 C.F.R. §§ 820.20(a), 820.20(b)(2), and 820.70(e)—and supported that claim with a pre-surgery FDA warning letter finding Stryker's Shells were adulterated under 21 U.S.C. § 351(h), followed by a device recall that included the plaintiff's specific implant. *Bass*, 669 F.3d at 510–11. The court in *Bass* was explicit: a plaintiff must plead "the existence of a manufacturing defect caused by a violation of federal regulations *and* allegations connecting a defect in the manufacture of the specific device to that plaintiff's specific injury." *Id.* at 512. (emphasis in original). The *Bass* plaintiff had a warning letter, a recall, named regulations, and a specific causal theory. Plaintiffs here have none of those things.

A court in this circuit applied *Bass* to nearly identical facts and reached the same conclusion. In *Williamston v. Medtronic, Inc.*, No. 13-2044, 2014 WL 2042004 (W.D. La. May 16, 2014), the court found that plaintiffs' complaint "differ[ed] from the *Bass* plaintiff's complaint in that the latter went a step beyond the instant plaintiffs' pleading in claiming that his injury was caused by the violation of several specific regulations." *Id.* at *7. Because the plaintiffs in *Williamston* "failed to set forth the specific federal violations upon which their parallel claims

6

[were] predicated," the court held they had not successfully stated a parallel claim, adding that "[t]he simple listing of various federal regulations is insufficient to successfully plead a state law claim predicated on the violation of federal requirements." *Id.* Plaintiffs here are in a similar position as the *Williamston* plaintiffs—except worse. The *Williamston* plaintiffs at least listed specific federal regulations; Plaintiffs here have not identified even that much and instead, have relied on illusory allegations of alleged of internal proprietary processes.

**C. Plaintiffs' Brief Introduces an "Alerting" Theory Not Pleaded in the Amended Complaint, and That Theory Is a Preempted Design Claim in Any Event.**

Plaintiffs' opposition argues at length that Mrs. Pellegrin "was not alerted" or alternatively, "fail[ed] to hear alarms or feel vibrations" before the shocks were delivered and that the device's alert system was deficient. This theory does not appear in the Amended Complaint—in fact, the Amended Complaint says the opposite. The Amended Complaint expressly lists as an alternative design an "enhanced patient alert system[] that provide[s] longer warning periods and require[s] patient confirmation before shock delivery." (Am. Compl. ¶ 109). That allegation presupposes the existence of a patient alert system in the FDA-approved design and argues for a different, better one. It is not an allegation that the device failed to alert Mrs. Pellegrin at all, nor that the device contained a manufacturing defect. It is a complaint that the FDA-approved alert system was inadequate—precisely the preempted design challenge that ZOLL identified in its motion.

A claim that LifeVest's alert and warning sequence should have been designed differently – which is what the Amended Complaint alleges – is expressly preempted. The FDA reviewed the specific alarm and warning sequence—including the vibration and audible alarms—through the PMA process. The FDA approved LifeVest device's detection algorithm, alarm and warning sequence, response button cancellation mechanism, and patient instructions for use, with full knowledge of the risk of unintended shocks. A state-law claim that the warnings should have been

longer, louder, or accompanied by a confirmation requirement imposes a requirement "different from, or in addition to" the federal requirements imposed through PMA. *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 321 (2008). It does not matter whether that claim is dressed as a design defect theory or a failure-to-alert theory; the substance controls.

To the extent Plaintiffs argue the existence of a manufacturing defect based on the alleged failure of the alarm system, the Court should disregard that argument as it is wholly unsupported by the Amended Complaint's allegations and is thus not properly before the Court. *See Mun. Employees' Ret. System of Michigan v. Pier 1 Imports, Inc.*, 935 F.3d 424, 436 (5th Cir. 2019) ("A plaintiff may not amend [its] complaint in [its] response to a motion to dismiss." (alterations in original) (quoting *Lohr v. Gilman*, 248 F. Supp. 3d 796, 810 (N.D. Tex. 2017)).

Plaintiffs cannot plead a preempted design claim in the Amended Complaint and then reframe it in opposition briefing as a manufacturing defect or a factual dispute about whether alarms were adequate. The claim, as pleaded and recast in briefing, challenges the FDA-approved design and is preempted.

**D. Plaintiffs' Opposition Confirms They Are Doubling Down on a *Res Ipsa* Theory, and Each Count Independently Fails the Twombly/Iqbal Pleading Standard.**

Plaintiffs' opposition does not cure the *res ipsa* problem at the core of every count. Their theory remains: the device shocked Mrs. Pellegrin when she was not in a treatable arrhythmia, therefore it must have been defective, therefore ZOLL must have violated some federal requirement. That deduction collapses at every step. The Fifth Circuit squarely rejected it in *Funk*, 631 F.3d at 782, holding that a complaint is "impermissibly conclusory and vague" when it does not specify the manufacturing defect or a causal connection between the failure of the specific manufacturing process and the specific defect in the process that caused the personal injury. Plaintiffs' opposition doubles down rather than cures: it defends the *res ipsa* inference as adequate,

8

argues the FDA's known-risk documentation (including LifeVest's labeling and instructions for use) is irrelevant, and offers nothing beyond the occurrence of the adverse event itself as support for the manufacturing deviation it needs to plead. That is precisely the approach *Funk* forbids.

The opposition's *res ipsa* theory is undermined by the very FDA record Plaintiffs seek to minimize. The FDA expressly approved LifeVest with full knowledge that the device would, on occasion, deliver a treatment shock to a conscious patient who does not press the response buttons. "Inappropriate shock" is listed in the FDA's Summary of Safety and Effectiveness Data as a known potential adverse event. (Doc. 8-3 (M. Mims Decl. Ex. 2, p. 8).) A known, FDA-reviewed outcome cannot simultaneously serve as circumstantial proof that the device deviated from its approved specifications. *See Carter v. Amgen, Inc.*, 2015 WL 13388039, *6 (C.D. Cal. July 16, 2015), *aff'd*, 682 F. Appx. 620 (9th Cir. 2017) (plaintiff's conclusory allegations that the relevant use was contraindicated were refuted by judicially noticed FDA labeling and dismissed); *see also Becker v. Cephalon, Inc.*, 2015 WL 5472311, *5–6 (S.D.N.Y. Sept. 15, 2015) ("a court need not accept allegations that are inconsistent with judicially-noticed facts"; failure-to-warn claims foreclosed where label specifically disclosed the risk plaintiff alleged was omitted). To hold otherwise would mean that every occurrence of any FDA-listed adverse event gives rise to a plausible inference of manufacturing deviation—a result that would swallow the preemption doctrine entirely. Plaintiffs offer no authority for that proposition, because none exists.

Independent of preemption, each count fails on its face under *Twombly* and *Iqbal*. On Count I (manufacturing defect), Plaintiffs still identify no specific deviation from any FDA-approved manufacturing process and no causal mechanism connecting a process failure to Mrs. Pellegrin's device. On Count II (design defect), Plaintiffs list six categories of alternative designs but allege no facts showing those designs were feasible at the time of PMA approval, would have been at

9

least as safe and effective, or could have been adopted without altering the PMA-approved configuration—the opposition contends this is a question for discovery, but that is not the pleading standard. On Count III (failure to warn), Plaintiffs do not explain what was inadequate about the FDA-approved labeling beyond asserting it was not enough, which this Court has held is insufficient. *See Naquin*, 2020 WL 7060150, at \*6 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''"") On Count IV (express warranty), Plaintiffs identify no specific document, label, or communication containing the alleged warranty that the device would only shock during confirmed treatable arrhythmias—a warranty the FDA-approved labeling expressly refutes. Bare incantation of each element, unsupported by specific facts, does not state a claim. *Iqbal*, 556 U.S. at 678.

Plaintiffs argue in the alternative that even if their claims are uncertain and pleaded insufficiently, the Court should deny dismissal and permit discovery to develop the factual record. That argument gets the standard exactly backwards. "A pleading that does nothing more than recite facts and bare legal conclusions is insufficient to 'unlock the doors of discovery'—and only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 at 678–79. Discovery is the reward for adequately pleading a claim, not the mechanism for finding one. A complaint resting on that hope does not cross the plausibility threshold, and the Court should not open the doors to discovery on claims Plaintiffs cannot plausibly plead.

## CONCLUSION

Plaintiffs' opposition confirms that no amendment can cure the fundamental deficiencies in the Amended Complaint. All claims against ZOLL should be dismissed with prejudice.

145354355.5

Respectfully submitted,

Dated: July 20, 2026

LISKOW & LEWIS, APLC


By: /s/ Michael C. Mims
Michael C. Mims, T.A. (#33991)
701 Poydras Street, Suite 5000
New Orleans, LA 70139
Telephone: (504) 581-7979
Telefax: (504) 556-4108
E-mail: mmims@liskow.com


Jenny A. Covington (pro hac vice)
Jenna L. Durr (pro hac vice to be submitted)
Matthew J. Smaron (pro hac vice)
**CARLTON FIELDS, P.A.**
80 South Eighth Street
Suite 2800
Minneapolis, MN 55402
612.605.9921
Jcovington@carltonfields.com
Jdurr@carltonfields.com
msmaron@carltonfields.com

*Counsel for ZOLL Medical Corporation*

145354355.5

## CERTIFICATION

I hereby certify that on this 20th day of July 2026, a copy of the foregoing and proposed order was served on all parties of record via the Court's ECF system.

/s/ Michael C. Mims
Michael C. Mims

12

145354355.5